STATE of Minnesota, Appellant,

v.

Mark Ajaak CHAM, Respondent.

No. A03–1239.

Court of Appeals of Minnesota.

June 1, 2004.

Review Denied July 20, 2004.

Mike Hatch, Attorney General, St. Paul, MN, and Gordon L. Moore, III, Nobles County Attorney, William A. Lemons, Assistant County Attorney, Worthington, MN, for appellant.

Mary M. McMahon, McMahon & Associates Criminal Defense, Ltd., Roseville, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge; ANDERSON, Judge; and STONEBURNER, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

On appeal from the district court's dismissal of the charges against respondent Mark Ajaak Cham, the state argues that the district court improperly concluded that Cham was denied his right to a speedy trial. The state also argues that the district court abused it discretion by (1) appointing an interpreter for Cham; (2) dismissing the charges without requiring Cham to make an offer of proof that the witnesses he intended to call required an interpreter and that their testimony would have been relevant; and (3) consid-

ering the cost of the proceeding in dismissing the charges. Because we conclude that Cham was not denied his right to a speedy trial, we reverse.

## FACTS

In October 2001, Kirk Honius, a Worthington police officer, responded to a report of a disturbance in progress in a parking lot. When Honius arrived on the scene, he found an eight-month pregnant woman, Abang Ojullu, standing in the parking lot. She told Honius that Cham, her boyfriend, had assaulted her. Ojullu also told Honius that Cham had been drinking and that he had driven away when he heard police sirens.

Honius provided information concerning the assault to Tim Gaul, another police officer who knew Cham from previous contact. Approximately one hour later, Gaul located Cham at a Texaco Food Mart and noticed that Cham was intoxicated. Gaul placed Cham under arrest for domestic assault and for driving under the influence.

Cham is an immigrant from Africa and speaks limited English. His native language is Anuak, a language spoken by a small group of people located in Sudan and western Ethiopia. When Gaul read Cham the implied consent advisory, Cham requested an Anuak interpreter. But Gaul could not obtain an Anuak interpreter. When Cham began to be disruptive Gaul restrained Cham and finally brought him to the Worthington jail.

Scott Berger, an investigator for the Worthington police, conducted two interviews with Cham. Cham told Berger that he did not need an interpreter. During the interviews, Cham spoke English unassisted, and Cham admitted both that he had assaulted Ojullu and that he had driven the car on the day of the incident. But Cham denied that he had been drinking.

After the complaint against Cham was properly filed, the court administrator set an omnibus hearing for November 2001. But the hearing was rescheduled to December 2001 after the interpreter that had been scheduled for Cham failed to appear. The omnibus hearing went forward in December 2001 with an interpreter. In February 2002, Cham appeared for arraignment. Although no interpreter was present, Cham pleaded not guilty to the charges against him and requested a jury trial and an Anuak interpreter for that trial. A jury trial and an interpreter were scheduled for July 2002. For administrative reasons, however, the jury trial was continued to October 2002.

In October 2002, the district court issued an order allowing Cham to proceed with an interpreter who would interpret those aspects of the proceeding that Cham did not understand, rather than translating every word. The trial was continued to January 2003, however, and then again to April 2003, because the interpreter was unavailable.

One day before the April 2003 trial was scheduled to begin, the interpreter contacted the court administrator to say she would not attend. Because another interpreter was not available, the trial was again rescheduled for late August 2003. In June 2003, Cham moved to dismiss the charges against him, arguing that he had been denied his right to a speedy trial. The district court denied the motion.

In mid-August 2003, the interpreter scheduled to appear at trial cancelled the appearance; no other Anuak interpreters were available for the August 2003 trial. On August 20, 2003, the district court, on its own motion, dismissed the case, reasoning that Cham's right to a speedy trial had been violated. The state now appeals the dismissal of the charges.

## ISSUES

I. Did the district court err in concluding that the state violated Cham's right to a speedy trial?

II. Did the district court abuse its discretion by appointing an interpreter for Cham pursuant to Minn. Stat. §§ 611.30–.34 (2002)?

## ANALYSIS

### I.

■ The state argues that Cham's right to a speedy trial was not violated because (1) the delay in this case was caused by extraordinary difficulties in obtaining an interpreter rather than by the fault of the prosecution; (2) Cham never exercised his right to speedy trial by demanding a speedy trial; and (3) Cham was not prejudiced by the delay between his arrest and the ultimate dismissal. We agree.

■ All criminal defendants have a constitutional right "to a speedy and public trial." Minn. Const. Art. I, § 6; *State v. Windish*, 590 N.W.2d 311, 315 (Minn.1999). Minnesota courts consider four factors in determining whether a defendant's right to a speedy trial has been violated. *State v. Widell*, 258 N.W.2d 795, 796 (Minn.1977). These four factors include: (1) the length of the delay; (2) the reason for the delay; (3) whether and when the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Widell*, 258 N.W.2d at 796. None of the factors is "either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Windish*, 590 N.W.2d at 315 (citing *Barker*, 407

U.S. at 533, 92 S.Ct. 2182 at 2193, 33 L.Ed.2d 101).

The district court did not rely on the *Barker* four-factor test in concluding that Cham's right to a speedy trial had been violated. Instead, the court reasoned that the cost of the matter had exceeded reasonable limits, that numerous attempts at obtaining an interpreter had failed, and that "based upon the inability of the Court to obtain an interpreter, the Defendant's right to a speedy trial has been denied."

■ Both parties cite *State v. Friberg*, 435 N.W.2d 509, 515 (Minn.1989), for the proposition that the decision of the district court that Cham's right to a speedy trial has been violated is reviewed using an abuse-of-discretion standard. But *Friberg* does not state a standard of review. *See Friberg*, 435 N.W.2d at 515 (concluding merely that "[c]onsidering the *Barker* factors in light of all the circumstances, we find that the trial court did not abuse its discretion by ruling that there was good cause for the delay and that defendants were not denied their right to a speedy trial"). Because appellate courts review constitutional questions de novo and Cham's claim raises a constitutional question, we conclude that the district court's speedy trial determination is subject to de novo review. *State v. Wiegand*, 645 N.W.2d 125, 129 (Minn.2002) ("We review de novo a lower court's ruling on constitutional questions."); *State v. Sewell*, 595 N.W.2d 207, 211 (Minn.App.1999) (We review constitutional issues de novo.), *review denied* (Minn. Aug. 25, 1999).

The district court erred by failing to apply the *Barker* test, but because we review de novo whether Cham's right to a speedy trial was violated, we will apply the *Barker* test to the facts in this case.

### 1. *The length of delay*

We evaluate the length of delay to determine if further review of a defendant's speedy-trial claim is warranted. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. We measure the length of delay from the time when the police arrest the defendant. *State v. Jones,* 392 N.W.2d 224, 235 (Minn. 1986). Here, there was a delay of 23 months from the date of arrest until the district court dismissed the charges. A delay of this length creates the presumption that Cham's right to a speedy trial was violated and triggers further inquiry. *See State v. Corarito,* 268 N.W.2d 79, 80 (Minn.1978) (concluding that delay of six months is sufficient to trigger further inquiry in the speedy trial analysis).

### 2. *The reason for delay*

We next consider the reasons for the delay. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. *Barker* places the primary burden of ensuring a speedy trial on the state and the court and recognizes that different weights will be assigned to different reasons for delay. *Id.* at 529, 531, 92 S.Ct. at 2192, 2191. In this case, administrative difficulties at the district court caused one continuance. But the on-going problem of obtaining an interpreter for Cham caused the majority of the delay. This delay had nothing to do with the district court administrator's effort to locate an interpreter, and the state was in no way responsible for the delay. Under these circumstances, despite the unusually long delay, and because the prosecution did not act in bad faith to delay the proceeding, the reason for delay weighs in favor of the state. *See State v. Sap,* 408 N.W.2d 638, 640 (Minn. App.1987) (under similar facts, denying appellant's claim that he was denied a speedy trial).

### 3. *Whether and when the defendant asserted his right to a speedy trial*

Cham never moved for a speedy trial, but he twice moved to dismiss the case based on violation of his right to a speedy trial. When a defendant moves for dismissal, but does not move for a speedy trial, this factor will not favor the defendant. *See e.g., Sap,* 408 N.W.2d at 640 (concluding that Sap's failure to move for a speedy trial, but instead for a dismissal, did not favor Sap in the speedy trial analysis).

### 4. *The prejudice to the defendant caused by the delay*

We consider three factors in determining if a defendant was prejudiced by the delay: "(1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired." *Windish,* 590 N.W.2d at 318. Cham asserts that he suffered prejudice because he was incarcerated for the DUI charge that was eventually dismissed for lack of probable cause, he suffered anxiety by having to appear again and again for a trial that never happened, and he knew that the alleged victim had recanted her testimony and therefore that the testimony was of doubtful admissibility. Only the claim that he experienced anxiety as a result of the delay supports Cham's claim of prejudice. *See Windish,* 590 N.W.2d at 318 (stating that minimizing the anxiety of the accused is a factor in determining whether the defendant was prejudiced by the delay). This prong of the speedy-trial analysis thus weighs in Cham's favor, if only slightly.

In conclusion, after applying the *Barker* test de novo to these facts, we conclude that the dismissal of the charges against Cham based on a violation of his right to a speedy trial was error. We reverse the

determination of the district court and remand with instructions to reinstate the complaint against Cham and to conduct proceedings not inconsistent with this opinion.[1]

## II.

The state argues that the district court abused its discretion by appointing an interpreter for Cham because (1) the evidence—including evidence that in a prior case Cham was not found to be handicapped in the English language—indicates that Cham is not handicapped in the English language, and therefore, is not entitled to an interpreter; and (2) the interpreter statute does not entitle Cham to have "somebody available in the event of a possible question"; it applies only to people so handicapped in the English language that they do not understand any of the proceedings.

The interpreter statute requires the appointment of an interpreter for a criminal defendant when that defendant is "handicapped in communication" because the defendant has "difficulty in speaking or comprehending the English language, cannot fully understand the proceedings or any charges made against the person ... or is incapable of presenting or assisting in the presentation of a defense." Minn.Stat. §§ 611.30, .31 (2002). Whether an interpreter shall be appointed for a defendant is within the discretion of the district court. *State v. Perez*, 404 N.W.2d 834, 838 (Minn.App.1987), *review denied* (Minn. May 20, 1987). We review the district court's decision to appoint or not appoint an interpreter under an abuse of discretion standard. *State v. Saldana*, 310 Minn. 249, 246 N.W.2d 37, 39 (1976).

Here, the district court implicitly found that Cham was "handicapped in communication" and therefore needed an interpreter present during the proceedings. Although the state's evidence that Cham was not handicapped in his ability to understand and speak English is compelling, we afford the district court "broad discretion based on its first-hand view" of indicators that a person is handicapped in communication, including: "mispronunciations, pauses, facial expressions, and gestures." *See State v. Yang*, 627 N.W.2d 666, 676 (Minn.App.2001) (finding, in the context of a witness who had already begun to testify, that the district court did not abuse its discretion in refusing to appoint an interpreter for the witness), *review denied* (Minn. July 24, 2001). Other indicators that a district court may consider, on a nonexclusive basis, in evaluating whether a person is handicapped in the English language include whether a "party's comprehension of the proceedings or communication with counsel or the presiding judicial officer" are inhibited. *See* 28 U.S.C. § 1827(d)(1) (discussing factors a presiding judicial officer may consider in assessing a party's need for an interpreter). The district court may also consider

---

1. Because we conclude that Cham was not denied his right to a speedy trial, and reverse the determination of the district court on this ground, we do not reach the state's other challenges to the district court's dismissal of the charges against Cham, specifically: that the district court abused its discretion by dismissing the charges against Cham based on the court's inability to secure interpreters for witnesses that Cham intended to call during trial without requiring Cham to (1) make an offer of proof demonstrating that the witnesses he intended to call are handicapped in communication; and (2) make an offer of proof demonstrating that those witnesses would provide testimony that would be helpful to Cham. Although we decline to address those issues directly here, the district court is not precluded from reevaluating those issues at trial under the standards set forth in *State v. Yang*, 627 N.W.2d 666, 676 (Minn.App. 2001), *review denied* (Minn. May 8, 2001) and *State v. Lavastida*, 366 N.W.2d 677, 680–81 (Minn.App.1985).

the complexity of the proceedings in evaluating the defendant's need for an interpreter. *United States v. Febus*, 218 F.3d 784, 791 (7th Cir.2000). The district court should consider these factors, as well as other indicia of language competency, in evaluating whether an interpreter is required. The district court may wish to consider the possibility of a pre-trial hearing devoted, at least in part, to language competency issues. Here, because the standard of review for the appointment of interpreters is abuse of discretion, and because it does not appear that the district court abused its discretion, we affirm the district court's determination that Cham was entitled to an interpreter under Minnesota statute.

### DECISION

We reverse the order of the district court dismissing the complaint against Cham. We remand with instructions to reinstate the complaint against Cham and proceed with the disposition of Cham's case. Because we reverse and remand the district court's dismissal of the action against Cham on this basis, we do not reach the state's remaining arguments for reinstatement of the complaint against Cham.

We affirm the district court's conclusion that Cham is entitled to an interpreter.

**Reversed and remanded.**