**STATE of Minnesota, Respondent,**

v.

**Denon Anthony RHOADS, Appellant.**

**No. A10–1568.**

Court of Appeals of Minnesota.

Aug. 1, 2011.

Lori Swanson, Attorney General, St. Paul, MN; and John J. Choi, Ramsey County Attorney, Thomas R, Ragatz, Assistant County Attorney, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; PETERSON, Judge; and SCHELLHAS, Judge.

## OPINION

MINGE, Judge.

Appellant challenges his convictions for first- and second-degree burglary under Minn.Stat. § 609.582, subd. 1(c), 2(a)(1) (2008), arguing that (1) there was insufficient evidence to prove he entered the building without consent; (2) his initial waiver of his right to counsel on the second-degree burglary charge was ineffective due to his mental condition and due to

the state's addition of a charge of first-degree burglary after he provided his waiver; (3) his constitutional right to a speedy trial was violated; and (4) he was improperly adjudicated guilty of both first- and second-degree burglary. We conclude that the district court did not abuse its discretion in not inquiring into whether appellant's mental condition affected his waiver of counsel. Although the district court erred in not obtaining appellant's waiver of his right to counsel on the additional charge of first-degree burglary, the record clearly and convincingly establishes that it was not prejudicial to construe his prior waiver of counsel to second-degree burglary as a continuing waiver to the first-degree charge. Therefore, we affirm on the waiver-of-counsel question. We further conclude that appellant was not denied a speedy trial, that there was sufficient evidence to support the guilty verdict, but that the second-degree burglary charge was a lesser-included offense of first-degree burglary. Accordingly, we affirm the conviction of first-degree burglary but vacate the conviction of second-degree burglary.

## FACTS

John Ryan was at his apartment when appellant Denon Rhoads, with black tape on his face, entered the building in which the apartment was located, forcefully entered the apartment, and went to the bedroom where Ryan was located. Rhoads accused Ryan of reporting him to the police for an unrelated incident and punched him. Ryan pulled a knife from under his mattress and Rhoads retreated back into the living room. Rhoads then threatened to kill Ryan and a friend who was visiting Ryan before leaving the apartment.

Rhoads was arrested on October 9, 2009, and charged with second-degree burglary under Minn.Stat. § 609.582, subd. 2(a)(1).

He was not able to post bail, and a public defender was appointed to represent him. At the time of his first appearance, the prosecutor apparently told Rhoads's attorney that if Rhoads pleaded guilty to the pending second-degree burglary charge, he would not amend the complaint to add a first-degree burglary charge. The offer was not pursued. At Rhoads's second appearance, in October 2009, Rhoads discharged his public defender attorney, waived his right to counsel, and proceeded pro se. At the time of his discharge, the public defender gave Rhoads a completed and signed demand for a speedy trial. The district court also appointed advisory counsel at that time. Rhoads did not file the speedy-trial form with the district court or verbally request a speedy trial until February 10, 2010.

During Rhoads's initial hearings, he complained of not being released on his own recognizance and of not getting all the medications he needed, reaffirmed his desire to represent himself, and complained that he was frustrated with repeated court appearances without a trial. On a couple of occasions he also complained of the lack of legal resources available to him. The record at the early hearings indicates that he had been previously institutionalized for mental illness and that he appeared agitated.

In December 2009, the prosecutor again stated that unless Rhoads pleaded guilty to second-degree burglary, the state would amend the complaint to add a charge of first-degree burglary. Rhoads again declined the offer. The state then amended the complaint to include the first-degree burglary charge. During several continuances of the trial date, the prosecutor continued to offer to drop the first-degree charge in return for a guilty plea to second-degree burglary, and the district court repeatedly made inquiries whether Rhoads

wished to have counsel appointed. On April 8, 2010, Rhoads reiterated his waiver of his right to a jury, repeated his determination to represent himself, and a bench trial was held. The district court found him guilty of both burglary counts and sentenced him to 92 months in prison. This appeal follows.

## ISSUES

I. Was the evidence sufficient to support the conviction for first-degree burglary?

II. Did Rhoads's initial waiver of counsel remain valid and does the record clearly and convincingly demonstrate that Rhoads was not prejudiced by the failure to renew his waiver after the first-degree burglary charge was added to the complaint?

III. Was Rhoads denied his right to a speedy trial?

IV. Is second-degree burglary a lesser-included offense of first-degree burglary?

## ANALYSIS

### I. Sufficiency of the Evidence

■ When reviewing a challenge to the sufficiency of the evidence, we conduct a thorough analysis to determine whether the factfinder reasonably could find the defendant guilty of the charged offense based on the facts in the record and the legitimate inferences that can be drawn from those facts. *State v. Chambers*, 589 N.W.2d 466, 477 (Minn.1999). In doing so, we view the evidence in the light most favorable to the verdict and assume that the factfinder believed the evidence supporting the guilty verdict and disbelieved any evidence to the contrary. *Id.* This is especially true when resolution of the matter depends mainly on conflicting testimony. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980).

To support a conviction of first-degree burglary, the state must prove beyond a reasonable doubt that the defendant (1) entered a building; (2) without consent; and (3) assaulted a person within the building. Minn.Stat. § 609.582, subd. 1(c). "Whoever enters a building while open to the general public does so with consent except when consent was expressly withdrawn before entry." Minn.Stat. § 609.581, subd. 4 (2008).

At trial, Ryan testified that Rhoads did not have consent to enter the apartment. Ryan stated that when a friend stepped out of his apartment, he asked her to prop open both the door to his apartment and the outside common entrance of the apartment building so he would not have to let her back into the building. However, the apartment door was not propped open all the way, and Rhoads kicked it open when he entered. Rhoads himself testified, "I'm not denying the fact that I broke in, that I didn't ask him." Although Ryan's apartment door was ajar and anyone could have entered his apartment by simply pushing on the door, the fact that his door was cracked open did not constitute an invitation to enter or consent to Rhoads's entry.

Ryan further testified that Rhoads was there because Ryan had reported him to the police and Rhoads wanted retribution. Rhoads's approach belies any innocent intentions in entering the apartment. Rhoads went to the apartment with black tape on his face—an apparent attempt to disguise his identity. The black tape supports the conclusion that Rhoads was there for malevolent reasons. Finally, Rhoads did not contest that he had a grudge against Ryan and assaulted him while in the apartment. Assuming that the district court believed the evidence in support of the conviction, Ryan's testimony alone is sufficient for the conviction. *See State v.*

*Miles,* 585 N.W.2d 368, 373 (Minn.1998) (stating that "a conviction may rest on the testimony of a single credible witness").

## II. Waiver of the Right to Counsel

 The United States and Minnesota Constitutions guarantee a criminal defendant the right to the assistance of counsel. U.S. Const. amends. VI, XIV, § 1; Minn. Const. art. I, § 6. Criminal defendants also have a "corollary constitutional right to choose to represent themselves in their own trial." *State v. Worthy,* 583 N.W.2d 270, 279 (Minn.1998) (citing *Faretta v. California,* 422 U.S. 806, 819–820, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975)). The right to an attorney can be waived if the waiver is "competent and intelligent." *Id.* at 275 (citing *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), *overruled on other grounds, Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). This court reviews a defendant's waiver of his right to counsel to determine whether the "record supports a determination that [the defendant] knowingly, voluntarily, and intelligently waived his right to counsel." *State v. Garibaldi,* 726 N.W.2d 823, 829 (Minn.App.2007). We will only reverse the finding of a valid waiver if it is clearly erroneous. *State v. Jones,* 772 N.W.2d 496, 504 (Minn.2009) (citation omitted). If the waiver is inadequate, we remand for a new trial. *Garibaldi,* 726 N.W.2d at 831.

Before accepting a waiver of counsel in a felony or gross misdemeanor case,

> the [district] court must advise the defendant of the following: (a) nature of the charges; (b) all offenses included within the charges; (c) range of allowable punishments; ... and (f) all other

facts essential to a broad understanding of the consequences of the waiver of the right to counsel, including the advantages and disadvantages of the decision to waive counsel.

Minn. R.Crim. P. 5.04, subd. 1(4); *see also Jones,* 772 N.W.2d at 504 (articulating criminal-procedure rule); Minn.Stat. § 611.19 (2008) (requiring a written waiver unless the defendant refuses to sign one); *State v. Diaz,* 274 Conn. 818, 878 A.2d 1078, 1086 (2005) (concluding that the defendant's waiver of counsel was invalid when the district court failed to inform him of the range of permissible punishment).

In October 2009, Rhoads completed and signed a petition to proceed pro se. The petition stated that he was charged with second-degree burglary and faced a minimum sentence of 32 months in prison, with a maximum of ten years.[1] Rhoads also had an extended colloquy with the district court judge before affirming his decision to discharge his public defender and to represent himself.

At the December 2009 hearing, the prosecutor said that the state would amend the complaint to add first-degree burglary unless Rhoads pleaded guilty to the second-degree charge. The prosecutor also noted that this was the same offer he had made to the public defender before Rhoads discharged his counsel. Rhoads rejected the plea bargain and reaffirmed his desire to continue pro se. The first-degree burglary charge was then added to the complaint. With the added charge, and using the then-assumed criminal-history score of four, his minimum presumptive sentence on the first-degree burglary charge was 75

---

1. The minimum presumptive sentence appears to have been calculated using a criminal-history score of four. At sentencing, Rhoads was found to actually have a criminal-history score of six. Rhoads does not point to the change in criminal-history score as a consideration relevant to the effectiveness of his waiver of counsel.

months, with a maximum of 20 years.[2] Minn. Sent. Guidelines IV (2008). Rhoads was not informed on the record of the increased range of possible punishments attached to the enhanced charge.

Rhoads does not contest the efficacy of his initial waiver of the right to counsel. But he argues that the waiver was no longer valid because his behavior and statements signaled that his mental health was deteriorating, and because lack of any warnings by the district court of the risk of a substantially greater sentence with the first-degree burglary charge meant his waiver was no longer knowing or intelligent. We address each argument in turn.

### A. *Mental Health Conditions*

■ Rhoads argues that his mental health deteriorated throughout the proceedings and required further inquiry into the validity of his waiver. At the outset of the proceedings, Rhoads indicated that he had Attention Deficit Hyperactivity Disorder (ADHD), had been diagnosed with bipolar disorder, and was seeing a psychiatrist. Rhoads was removed from two hearings after being "agitated," and he claimed that while he was in jail awaiting trial, he was not getting all of his medication. It also appears he had been assigned to the mental-health ward. However, in pretrial hearings, he also stated that his current condition was stable, that he was fully capable of representing himself, and that he had attended several colleges and earned the equivalent of a bachelor's degree. It is also apparent that he had been in Ramsey County District Court numerous times on criminal charges, was familiar with the system, and is an educated person.

This court gives great deference to the district court on credibility determinations. *See State v. Dickerson*, 481 N.W.2d 840, 843 (Minn.1992), *aff'd*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Here, the district court judge checked with the jail and was told that Rhoads was receiving all of his medication. The only medication that Rhoads specifically claimed he was denied was also not included in his medication list in the record. The district court decided that he was not deprived of needed medication. While Rhoads was removed from two pretrial hearings for brief outbursts, the record does not show a deteriorating mental state as the pretrial hearings progressed. Rhoads also conducted himself competently throughout his trial. Ultimately, standby defense counsel was appointed for Rhoads and attended the trial. Standby counsel did not raise any competency question. Under the circumstances of this case, we conclude that the district court did not clearly abuse its discretion in continuing to permit Rhoads to represent himself and not sua sponte ordering an evaluation.

### B. *Heightened Charge*

■ Reported Minnesota decisions have not considered the question of whether a pro se defendant's initial waiver of counsel continues to be effective if the complaint is amended to add new charges that carry greater penalties. The Ninth Circuit stated that "[t]he essential inquiry is whether circumstances have sufficiently changed since the date of the [waiver of counsel] that the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel." *United States v. Hantzis*, 625 F.3d 575, 581 (9th Cir.2010); *see also Davis v. Unit-*

---

**2.** The minimum presumptive sentence with a criminal-history score of six was 92 months. Minn. Sent. Guidelines IV.

*ed States*, 226 F.2d 834, 840 (8th Cir.1955) (noting that the waiver of counsel at a guilty plea remains valid at sentencing when "nothing happened in the meantime, such as an unreasonable lapse of time, ... *new charges brought,* a request from the defendant, or similar circumstances" (emphasis added)).

In this case, after Rhoads initially waived counsel, the prosecutor amended the complaint, adding the first-degree-burglary charge that roughly doubled the minimum presumptive and statutory-maximum sentences. There is nothing in the record indicating that Rhoads was informed of the substantial increase in the range of punishment associated with the new first-degree-burglary charge.[3] The apparent reason for the rule requirement that the district court advise a defendant who plans to represent himself of the range of punishment is to call attention to the sobering consequences of a criminal conviction and the prudence of representing one's self. We conclude that this additional charge, and associated increase in the range of punishment, sufficiently changed the circumstances so that Rhoads's original waiver of counsel could no longer be considered knowing and intelligent. At that time, the district court had a duty to review any of the rule 5.04, subd. 1(4) factors that had changed, which included advising Rhoads of the nature of the added charge and its greater potential penalty and to reaffirm Rhoads's desire to proceed pro se.

■ The question remains what relief should be granted when a proper waiver is not obtained for the additional charges. The Minnesota Supreme Court has found the initial waiver of counsel valid in circumstances where "the district court failed to follow a particular procedure." *In re G.L.H.*, 614 N.W.2d 718, 723 (Minn. 2000) (citing *Worthy,* 583 N.W.2d at 275–76; *State v. Brodie,* 532 N.W.2d 557, 557 (Minn.1995)). In those cases, the court considered " 'the particular facts and circumstances surrounding [a] case, including the background, experience, and conduct of the accused.' " *Worthy,* 583 N.W.2d at 275–76 (quoting *Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023). Similarly, we conclude that where the district court does not follow a particular procedure in reviewing changes to the factors in rule 5.04, subd. 1(4), a waiver of counsel can still be valid if the record as a whole clearly and convincingly demonstrates that the accused is not prejudiced by the error. Thus, absent an express reaffirmation of the waiver, we look to the circumstances in the case to determine if the waiver remains valid. Here, four considerations appear relevant.

■ First, we consider the background and experience of the accused and whether it clearly appears that the accused understands the changed circumstances, including the range of allowable punishment. *See, e.g., Schell v. United States,* 423 F.2d 101, 102–03 (7th Cir.1970) (concluding a waiver of counsel was invalid based on a variety of factors, including the youth and inexperience of the defendant, and the fact that he was sentenced under a different statute, with an increased maximum sentence, than the one he pleaded guilty to).

Here, it appears from the record that Rhoads has a college education, has had significant experience with the criminal-justice system, and demonstrated an understanding of legal concepts in his letters to the judge and comments in court. Also, the very words used to identify the crime

---

3. Although the record does not clearly indicate that an amended complaint was served on Rhoads, he alluded to receiving it during a hearing and affirmatively rejected the plea offer after the charge was added.

convey the relative seriousness of the charges. A "first-degree" offense would presumably involve more prison time than a "second-degree" offense. Rhoads indicated that he was aware of the additional charge. A person with Rhoads's experience with the criminal-justice system would understand the increased severity of the charge and of the resulting punishment. The prosecutor made an offer to Rhoads that, unless he would plead guilty to the second-degree charge, the state would amend the complaint to add first-degree burglary. After the charge was added, the state renewed the plea offer as one in which the first-degree charge would be dropped for a plea to the second-degree charge. Rhoads acknowledged the new charge on the record and declined the offer again. In this context, Rhoads can be presumed to have understood that the new charge was significantly more serious.

We acknowledge that Rhoads has asserted that his mental condition and lack of proper medication affected his ability to represent himself and that this affected his ability to comprehend the risk of added punishment. However, as discussed above, the record does not show a deteriorating mental state. The district court judge contacted the jail, inquired into his medical records, and found that Rhoads was receiving all of his medication. The district court also patiently proceeded through the pretrial hearings and appointed standby counsel. As already indicated, we defer to the district court on this matter and accordingly do not consider Rhoads's mental condition or medication.

■ Second, we evaluate the impact of any changes in charges and penalty in terms of the complexity of the criminal proceeding. If the changed circumstances—such as an additional charge—presented a different type of criminal activity, raised new contested issues, or increased the complexity of the case, the waiver of counsel would not be effective without reviewing the new charges with the accused. However, such a material change in circumstances did not occur here. The elements that the state needed to prove did not substantively change with the new charge. To establish a prima facie case of second-degree burglary, the state must prove that the defendant (1) entered a dwelling; (2) without consent; and (3) with the intent to commit a crime. Minn.Stat. § 609.582, subd. 2(a)(1). For first-degree burglary, instead of proving the intent to commit a crime, the state must prove that the defendant assaulted someone within the building. *Id.,* subd. 1(c). From the outset of this prosecution, the state's case included clear evidence of an assault. This was sufficient evidence to prove the element of first-degree burglary. In fact, Rhoads did not deny that he assaulted Ryan in his home. This was not part of his defense. Thus, the increased charge had no impact on the prosecution's case or Rhoads's defense and therefore this factor weighs in favor of the continued validity of his waiver of counsel.

■ Third, we take into account the defendant's access to legal counsel during the criminal proceedings. Rhoads was initially represented by appointed counsel. At his second appearance, Rhoads filled out and signed the petition to proceed pro se, had an extended colloquy with the district court, and was granted his request to discharge his counsel. Several months before trial, Rhoads was also appointed standby counsel who was available at all the subsequent pretrial hearings. When the prosecution first disclosed its intention to add the charge of first-degree burglary if Rhoads did not plead guilty, Rhoads still had appointed counsel. Counsel was available to advise Rhoads, and Rhoads does not claim that he did not have the ability

to discuss the proposed amendment with counsel. Later, Rhoads had standby counsel and could have asked about the significance, if any, of the increased charges. Based on the availability of counsel and standby counsel, this factor supports a finding that Rhoads's original waiver of counsel remained valid.

■ Finally, we consider the clarity of the defendant's desire to proceed pro se. Rhoads had seven pretrial hearings after discharging his counsel, at which he repeatedly affirmed his choice to proceed pro se. During several of these, he knew he was facing a first-degree burglary charge. While at times he expressed some concern over his access to legal research materials, he never wavered in his desire to represent himself and told the district court that he was ready for trial. Before his trial began, the district court reaffirmed his choice to proceed pro se. Rhoads's adamant and repeated statements that he wanted to represent himself support a finding that the original waiver remained valid.[4]

Because the record supports the conclusion that Rhoads understood and acknowledged the new charge and its reasonable implication of a greater penalty, because the new charge had little impact on the complexity of the case or the state's evidence, because Rhoads had the benefit of counsel at critical times during the proceedings, and because Rhoads continually affirmed his desire to proceed pro se, we

conclude that the record clearly and convincingly establishes that the failure of the district court to advise Rhoads of the greater penalty accompanying the added charge was not a prejudicial violation of Rhoads's right to counsel.

## III. Speedy Trial

The third issue is whether Rhoads was denied his right to a speedy trial as provided by the Minnesota Rules of Criminal Procedure and the United States and Minnesota Constitutions. We address each argument in turn.

### A. Minnesota Rules of Criminal Procedure

■ "The interpretation of the rules of criminal procedure is a question of law subject to de novo review." *Ford v. State*, 690 N.W.2d 706, 712 (Minn.2005). The Minnesota Rules of Criminal Procedure states:

> A defendant must be tried as soon as possible after entry of a plea other than guilty. On demand of any party the trial must start within 60 days of the demand unless the court finds good cause for a later trial date. The time period begins on the date of the plea other than guilty.

Minn. R.Crim. P. 11.09(b).

When Rhoads chose to proceed pro se, his defense counsel gave him a completed and signed written demand for a speedy trial. However, Rhoads did not file the

---

4. We note that we considered the sufficiency-of-the-evidence question earlier in this opinion and concluded that Rhoads's own testimony was almost sufficient in and of itself to establish his guilt. Under the circumstances, one might ask whether a rational person would plead not guilty and risk the greater penalty of first-degree burglary when a plea agreement for second-degree burglary has been offered. Legal counsel would presumably be helpful in evaluating this situation. However, Rhoads had legal counsel at the outset and appears to have been adamant both about his innocence and the malevolent character of the victim. Rhoads's insistent self-representation to the second-degree burglary charge in these circumstances had all the characteristics of a high-risk strategy. The addition of the first-degree charge only changed the level of the risk, not the fact of the risk.

document with the district court until more than three months later. Before that time, the closest Rhoads came to making a demand for a speedy trial was a January 4, 2010 statement to the district court that "I'm ready to go to trial right now." Without more, that statement is not clear enough to be construed as an assertion of the right to a speedy trial. Rather, it is a statement that the case can be placed on the docket. Although Rhoads was jailed pending trial and conveyed his wish to be released, he did not request a reduction in bail nor did the district court sua sponte consider questions related to either bail or a speedy trial. We are reluctant to require district court judges to raise pretrial issues for the benefit of a pro se accused. By proceeding pro se, Rhoads accepted the risk posed by his lack of understanding of the rules of criminal procedure. Part of that risk was not realizing that he needed to actually demand a speedy trial to start the criminal-procedure clock running. Rhoads was tried on April 8, 2010, which was within 60 days of his February 10 demand. This trial date complied with that requirement of the rules. Because the "as soon as possible" requirement of the rule leads to the balancing analysis required by the constitutional guarantee, we do not separately consider that language in the rule.

**B. Constitutional Guarantee**

■ ■ In addition to the Minnesota Rules of Civil Procedure, the United States and Minnesota Constitutions guarantee a criminal defendant the right to a speedy trial. U.S. Const. amends. VI, XIV, § 1; Minn. Const. art. I, § 6. "A speedy-trial challenge presents a constitutional question subject to de novo review."

*State v. Griffin,* 760 N.W.2d 336, 339 (Minn.App.2009).

■ ■ Minnesota follows a four-part balancing test to assess whether the constitutional right to a speedy trial has been violated. *State v. Widell,* 258 N.W.2d 795, 796 (Minn.1977) (adopting the analysis for speedy-trial violations first articulated in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)). The court must consider: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant. *Id.* None of the factors are dispositive on their own; they must be considered together with other relevant circumstances. *State v. Windish,* 590 N.W.2d 311, 315 (Minn. 1999) (citing *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193).

*Length of Delay*

■ ■ Any material delay is a "triggering mechanism" that requires further review of whether the speedy-trial claim was violated. *Id.* A delay of six months is sufficient to trigger further inquiry. *State v. Corarito,* 268 N.W.2d 79, 80 (Minn.1978). The delay has been measured from the time the police arrested the defendant.[5] *State v. Cham,* 680 N.W.2d 121, 125 (Minn. App.2004) (citing *State v. Jones,* 392 N.W.2d 224, 235 (Minn.1986)), *review denied* (Minn. Jul. 20, 2004). Rhoads was arrested on October 9, 2009 and went to trial on April 8, 2010—one day short of a six-month delay. A delay of this length creates the presumption that Rhoads's right to a speedy trial was violated and triggers further inquiry. However, the

**5.** The state incorrectly argues that the delay is measured from when the defendant formally demands a speedy trial. The formal demand triggers the time periods under Minn. R.Crim.

P. 11.09(b), but a formal demand is not necessary to put the constitutional right at issue. *Windish,* 590 N.W.2d at 318.

length of time does not, as an independent factor, provide strong support for finding a violation.

*Reasons for Delay*

 The primary burden of ensuring a speedy trial is on the court and the prosecutor. *Windish,* 590 N.W.2d at 316. Where a case has been delayed due to calendar congestion, the delay weighs against the state, but less heavily than if the state deliberately attempted to delay the trial. *State v. Friberg,* 435 N.W.2d 509, 513 (Minn.1989) (citing *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192).

At the December 10, 2009 hearing, the case was scheduled for a four-week trial block starting in January 2010. Rhoads's case was number ten on the trial calendar and the district court did not reach the case during the blocked time period. The district court continued the case and Rhoads made his first formal speedy-trial demand on February 10, 2010. In March, the trial was continued again due to a conflict in the prosecuting attorney's schedule. Rhoads finally had his day in court on April 8, 2010.

The state argues that part of the delay was caused by Rhoads's failure to promptly request a speedy trial. The lack of a demand caused the computer system to not prioritize his case and therefore placed it lower on the trial calendar. However, how the court's computer systems operate is outside a defendant's control, and this delay is attributable to the state. The delays in this case were mainly due to court congestion and scheduling conflicts with the prosecutor, resulting in this factor weighing in Rhoads's favor.

*Assertion of Right to Speedy Trial*

 The assertion of the right to a speedy trial does not have to be a formal demand, but can be "any 'action whatever ... that could be construed as the asser-

tion of the speedy trial right.'" *Windish,* 590 N.W.2d at 317 (quoting *Barker,* 407 U.S. at 534, 92 S.Ct. at 2194). A defendant's assertion of the right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93. Further, "the frequency and force of a demand must be considered when weighing this factor and the strength of the demand is likely to reflect the seriousness and extent of the prejudice which has resulted." *Friberg,* 435 N.W.2d at 515.

Rhoads did not demand a speedy trial until February 10, 2010–four months after he was arrested. Any earlier statements, including "I'm ready to go to trial right now," are too vague to constitute a speedy-trial demand. After his speedy-trial demand, Rhoads did persistently assert the right. However, the failure to assert his right for four months weighs against Rhoads.

*Prejudice*

The United States Supreme Court has indentified three interests that the right to a speedy trial was intended to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) avoiding impairment of the accused's defense. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. The impairment of a defense is the most serious. *Windish,* 590 N.W.2d at 318.

 The delay in voicing a complaint before February 10, as discussed above, weighs against a finding of prejudice. *See Friberg,* 435 N.W.2d at 515 (reasoning that defendant's "minimal effort" in waiting two months to file a speedy-trial demand contributed to a lack of serious prejudice.) And pretrial incarceration alone, while unfortunate, is also not enough to demon-

strate prejudice. *State v. Stroud*, 459 N.W.2d 332, 335 (Minn.App.1990).

Rhoads argues that his incarceration compromised his ability to get necessary medication and treatment. He was removed from the courtroom twice after becoming agitated. Other than his actions in court, there is nothing in the record to substantiate Rhoads's claim that he was not getting his necessary medication. The district court investigated and confirmed that he was receiving his prescribed medications.

Rhoads also argues that he was prejudiced because he was restricted in his access to legal materials to prepare for his trial. Rhoads informed the district court twice that he did not have access to law books and the law library. However, he also waived his right to counsel knowing that he would be incarcerated until his trial and would have limited access to legal materials. Rhoads also noted that he was prepared for trial on multiple occasions and points to no specific impairment to his defense. Rhoads makes no argument as to how his defense would have been stronger had trial occurred at an earlier point in time.

Weighing the *Barker* factors, we note that the length and reasons for the delay weigh against the state. However, Rhoads waited four months before asserting his right to a speedy trial and did not demonstrate prejudice beyond the fact that he was incarcerated before trial and that his incarceration increased his anxiety and concern. While such an extended pretrial incarceration is troubling, we conclude that it does not rise to the level of a violation of the constitutional right to a speedy trial that requires vacating a conviction.

### III. Lesser–Included Offense

■ Minnesota law protects defendants from being convicted of both a crime and a lesser degree of the same crime. Minn.Stat. § 609.04, subd.1(1) (2008). The district court adjudicated Rhoads guilty of both first- and second-degree burglary. The district court only sentenced him for his conviction of burglary in the first degree. But because the district court convicted Rhoads on both counts, we vacate the conviction for second-degree burglary as a lesser degree of first-degree burglary.

### DECISION

We hold that after Rhoads waived his right to counsel, he should have been advised of the consequences, including the increase in the range of punishment resulting from the addition of the first-degree burglary charge. But we conclude that because the record clearly and convincingly demonstrates that the omission was not prejudicial, the error is not reversible. We also conclude that Rhoads was not denied his right to a speedy trial and that the evidence was sufficient to support a conviction for first-degree burglary. However, because second-degree burglary is a lesser-included offense of first-degree burglary, the district court erred by entering convictions on both counts. Accordingly, we vacate the second-degree burglary conviction.

**Affirmed in part, vacated in part.**