*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1216**

State of Minnesota,
Respondent,

vs.

Ron Wesley Epps,
Appellant.

**Filed July 14, 2014
Reversed
Smith, Judge**

Hennepin County District Court
File No. 27-CR-12-35370

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Smith, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SMITH**, Judge

Because the district court violated appellant's right to a speedy trial, we reverse appellant's conviction of felony violation of a domestic abuse no-contact order.

**FACTS**

On October 24, 2012, respondent State of Minnesota charged appellant Ron Wesley Epps with felony violation of a domestic abuse no-contact order. On October 25, at his first appearance in district court, Epps, who was not able to post bail, requested a speedy trial and stated that he would represent himself. The district court stated, "You're demanding a speedy trial so we'll recognize that."

Epps next appeared on November 20, for an omnibus hearing. Epps reasserted his speedy-trial right, again stating that he would "just represent [him]self." Because Epps was charged with a crime that carried a presumptive prison sentence, the district court ordered Epps "to consult with the public defender" before continuing; this order involved rescheduling Epps on the first-appearance calendar.

Epps returned to the first-appearance calendar on December 10. At the hearing, Epps again stated that he would represent himself and informed the district court of his previous speedy-trial demands.[1]

---

[1] Epps later informed the district court that, on December 10, he did not actually speak with a public defender; he merely went "up to the window" and declined their services.

Epps returned to the district court on December 17. Epps again asserted his speedy-trial right. The district court scheduled a follow-up hearing for December 20 and a pretrial hearing for January 11.

At the December 20 hearing, the district court stated that it had "no record of a speedy trial being demanded in any form," but he would "set a trial at the earliest possible moment," after January 11. The district court also informed Epps that the state was transferring his case to a different prosecutor; the original prosecutor stated that the transfer would "not have any bearing on the timing for Mr. Epps's case."

At the January 11 hearing, Epps immediately reasserted his speedy-trial right. The district court declined to address the issue and scheduled trial for March 5.

Trial began one day earlier than scheduled, on March 4, 2013. At multiple points during the trial, Epps reiterated that he had asserted his speedy-trial right; the district court replied that it had "made [its] rulings on that." The jury found Epps guilty as charged and the district court sentenced Epps to 24 months' imprisonment.

## D E C I S I O N

Both the United States and Minnesota Constitutions guarantee a criminal defendant the right to a speedy trial. U.S. Const. amends. VI, XIV, § 1; Minn. Const. art. I, § 6. This right attaches "when a formal indictment or information is issued against a person or when a person is arrested and held to answer a criminal charge." *State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986). Because the constitutional right to a speedy trial is not dependent on the application of Minnesota Rule of Criminal Procedure 11.09, which creates a presumptively prejudicial time period that "begins on the date of the plea other

than guilty," district courts should be mindful of the need to use independent judgment to provide a speedy trial when such a demand is made by a defendant prior to a plea. Minnesota courts consider the following factors to determine whether a delay violated this right: "(1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant." *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999) (citing *Barker v. Wingo*, 407 U.S. 514, 530-33, 92 S. Ct. 2182, 2191-93). These *Barker* factors are "considered together with such other circumstances as may be relevant"; no factor is independently necessary or sufficient to conclude that the defendant did not receive a speedy trial. *Id.* (quotation omitted). Whether a defendant's speedy-trial right has been violated presents a constitutional question subject to de novo review. *State v. Cham*, 680 N.W.2d 121, 124 (Minn. App. 2004), *review denied* (Minn. July 20, 2004). In light of our standard of review, although the trial court did not analyze the *Barker* factors, we will apply those factors to the facts in the record. *See State v. Griffin*, 760 N.W.2d 336, 340 (Minn. App. 2009).

"[T]he first [*Barker*] factor, the length of delay, is to some extent a triggering mechanism in that until some delay, which is presumptively prejudicial, is evident the other factors need not be considered." *Jones*, 392 N.W.2d at 235. Here, the parties do not dispute that the more-than-four-month delay is presumptively prejudicial and requires review of the remaining three factors. *See id.* (finding seven-month delay sufficient to trigger further analysis).

The second *Barker* factor is the reason for the delay. "The state and the courts have the burden of ensuring speedy trials for criminal defendants." *Griffin*, 760 N.W.2d at 340. However, if a presumptively prejudicial delay was caused by the defendant or was due to good cause, there is no speedy-trial violation. *Id.* "[G]ood cause for delay does not include calendar congestion unless exceptional circumstances exist." *Id.*

Here, we find two distinct periods of delay: the period for Epps to consult with a public defender and the period after such opportunity. Because Epps was charged with a crime that carried a presumptive prison sentence, we conclude that the first delay was due to good cause. However, the second delay is completely unexplained. The district court failed to find *any* cause for the delay, let alone good cause. To the contrary, when Epps asserted his speedy-trial right for the fifth time, the district court stated that it had "no record of a speedy trial being demanded in any form." Isolating the second, unexplained period, we conclude that the delay is presumptively prejudicial. Because the second period of delay is neither attributable to Epps nor supported by good cause, this factor weighs in favor of Epps.

The third *Barker* factor is whether Epps asserted his right to a speedy trial. It is undisputed that Epps demanded a speedy trial at his first appearance, and reinforced this demand at each of his subsequent hearings and during trial. This factor weighs in favor of Epps.

The fourth *Barker* factor is whether the delay prejudiced Epps. "To determine whether a delay prejudices a defendant, this court considers three interests that the right to a speedy trial protects: (1) preventing lengthy pretrial incarceration; (2) minimizing the

5

defendant's anxiety and concern; and (3) preventing possible impairment to the defendant's case." *Id.* at 340-41. Although the third interest is the most important, it is not required for a finding of a speedy-trial violation. *Id.* at 341. Rather, "[i]t is undeniable that prejudice flows from any deprivation of a constitutional right. The prejudice is exacerbated when the deprivation causes protracted loss of liberty." *Id.* Here, Epps was incarcerated pending trial. This fact, coupled with Epps's immediate and consistent assertion of his speedy-trial right, weighs the fourth factor in favor of Epps. *See id.* (concluding that although appellant was not incarcerated while awaiting trial, the district court so severely restricted her freedom that "this factor weighs heavily in [her] favor"); *cf. State v. Rhoads*, 802 N.W.2d 794, 807-08 (Minn. App. 2011) (concluding that when appellant waited four months to assert his right to a speedy trial, "pretrial incarceration alone, while unfortunate, is. . . not enough to demonstrate prejudice"), *rev'd on other grounds*, 813 N.W.2d 880 (Minn. 2012).

Because all of the *Barker* factors weigh in Epps's favor, we conclude that his constitutional right to a speedy trial was violated. Accordingly, we reverse his conviction.

**Reversed.**

6