STATE of Minnesota, Respondent,

v.

Charles Jack WIDELL, a.k.a. Paul Lakey, Appellant.

No. 46426.

Supreme Court of Minnesota.

Oct. 7, 1977.

C. Paul Jones, Public Defender, Robert Oliphant, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Gary Hansen, Sp. Asst. Atty. Gen., St. Paul, Ronald H. Schneider, County Atty., Willmar, for respondent.

ROGOSHESKE, Justice.

Defendant was found guilty by a district court jury of a charge of burglary, Minn.St. 609.58, and was sentenced to a term of up to 5 years in prison, with the sentence to run consecutively to a term defendant was serving in Iowa at the time of his trial. Defendant appeals from the judgment of conviction and asserts that he was denied a speedy trial, that certain evidence was erroneously admitted, that the prosecutor committed misconduct, and that there was insufficient evidence to convict. We affirm.

1. Defendant and two other men were arrested in 1973 and charged with burglary of a clothing store in Willmar. One other accomplice to the crime escaped. During his trial, defendant fled the jurisdiction, thereby forcing a termination of the trial without a verdict. A short time later defendant was arrested, charged, convicted, and imprisoned in Iowa for shoplifting. Minnesota prosecuting authorities subsequently filed a detainer against him with Iowa prison officials but made no effort to have defendant returned to Minnesota for trial. Although defendant easily could have pursued his right to a speedy trial under the interstate agreement on detainers, Minn.St. 629.294, it was not until mid-1975 that he filed a demand for trial pursuant to the provisions of the agreement. Once he did this, a trial was held within the 180 days specified by the agreement.

Defendant contends that, even though he did not request an immediate trial in the manner specified by the agreement until 1975, the state prior to that time should have taken steps to bring him to trial, and that the failure of the state to do so deprived him of his right to a speedy trial. See, *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Determination of this issue requires an analysis of the case in terms of the four main categories of considerations specified in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These considerations are: (a) Length of delay, (b) reason for delay, (c) defendant's assertion of his right, and (d) prejudice to defendant.

Analysis of the instant case in light of these four categories reveals the following:

(a) The delay in bringing defendant to trial was sufficient to trigger further inquiry.

(b) Defendant was the initial cause of the delay because he fled the state in the middle of his trial. However, in fairness, it is also true that the state really has not offered an adequate justification for its failure to take steps to get custody of defendant for trial.

(c) Although defendant did not file a demand for trial in the manner required by the agreement until mid-1975, it appears that in mid-1974 he served the prosecutor with a motion to dismiss on the ground that he had been denied his right to a speedy trial. The fact that defendant did not file this with the court would not seem to matter for constitutional purposes, but the courts are split on whether a motion for dismissal conveys a message that defendant wants a speedy trial. See, Rudstein, *The Right to a Speedy Trial: Barker v. Wingo In the Lower Courts*, 1975 U.Ill.L.F. 11, 37. Decision of this issue may depend on the factual context. Looking at defendant's acts in the factual context of this case, we believe the conclusion is inescapable that defendant did not really want a speedy trial on the charges but instead at all times wanted to escape a trial on the charges.

(d) Defendant's claim of prejudice is threefold, specifically, that the pendency of the charges made him ineligible for participation in rehabilitation programs in Iowa; that the delay meant a loss of the possibility of receiving a sentence at least partially concurrent with the Iowa sentence; and

finally, that the delay impaired his defense. While the pendency of the charges may have prevented defendant from participating in certain rehabilitation programs, defendant has not shown that his defense was prejudiced by the delay in bringing him to trial, and there are cases holding that the imposition of a consecutive sentence, as here, precludes the allegation of denial of benefit of concurrent sentencing. *Morris v. Wyrick*, 516 F.2d 1387 (8 Cir.), certiorari denied, 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975).

Balancing all the factors, we conclude that defendant has not shown that his right to a speedy trial was denied.

 2. The second issue relates to (a) whether a *Rasmussen* notice should have been given and a hearing held on the admissibility of evidence that defendant gave a false address when he was booked, and (b) whether routine booking questions relating to name and address or similar matters must be preceded by a *Miranda* warning. In *State v. Smith*, 295 Minn. 65, 69, 203 N.W.2d 348, 351 (1972), this court, without deciding the issue, stated that "booking questions have value to the criminal process independent of any tendency to uncover admissions" and that "police have a legitimate interest in orderly records identifying the names, addresses, and places of employment of those arrested." Other courts, employing similar reasoning, have held that *Miranda* warnings need not be given before asking routine booking questions (see, McCormick, Evidence [2 ed.] p. 329), and we so hold. Because the false statements admitted against defendant therefore were not the type of statements covered by the constitutional exclusionary rule relating to illegally obtained evidence, a *Rasmussen* notice and hearing were not required. *State v. Dick*, Minn., 253 N.W.2d 277 (1977); *State v. Sharich*, 297 Minn. 19, 209 N.W.2d 907 (1973).

There is no reason to discuss defendant's third and fourth contentions in detail. Suffice it to say, there is no merit to either. Defendant received a fair trial, not tainted by any prejudicial error, and the evidence against him was clearly sufficient to support the jury's verdict.

Affirmed.

WAHL, J., not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.