Tony Ray COLLINS, a.k.a. Anthony Tony Collins, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C1–86–5.

Court of Appeals of Minnesota.

April 15, 1986.

Review Denied May 29, 1986.

C. Paul Jones, Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Beverly J. Wolfe, Asst. Co. Atty., Minneapolis, for respondent.

Considered and decided by WOZNIAK, P.J., HUSPENI and RANDALL, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Appellant was convicted in the district court, Hennepin County, of burglary in the

second degree in violation of Minn.Stat. § 609.582, subd. 2(a) (1984). He appeals from the district court's order denying his petition for post-conviction relief. We affirm.

## FACTS

On July 4, 1984, at about 7:30 p.m., David Dennie looked out of an upstairs window of his house in Minneapolis and saw a black man in a yellow jogging suit standing by the window of the house directly across the street at 2647 Dupont Avenue North. He observed the man step back from the window and act as though he was putting something back in his pocket. The man then walked back to the window, lifted it open, and crawled into the house.

The residents of the house across the street, Debra Donohoe and her three children, had left to go out of town the day before. Upon seeing the man enter the house, Dennie immediately dialed "911" to report what he had seen. The police arrived at the scene while Dennie was still speaking to the 911 operator.

Officers Vernon Rose and Robert Thunder of the Minneapolis Police Department received a "burglary in progress" call at approximately 7:30 p.m. They proceeded directly to 2647 Dupont Avenue North and arrived there about three minutes after receiving the call. Officer Thunder ran to the front of the house while Officer Rose ran to the rear. Upon reaching the rear of the house, Officer Rose observed a black male in a yellow t-shirt and jogging pants sitting on the ground tying his shoe. The man was later identified as the appellant. Officer Rose observed a blue pillowcase, torn on one side and with pennies, peaches, apples, and other items spilling from it, lying on the ground near appellant.

Officer Rose placed appellant under arrest, handcuffed him, and placed him in the squad car. He then returned to the rear of the house and seized the pillowcase and its contents. Upon returning to the squad car, he asked appellant questions regarding his name, height, weight, and other general biographical information for the police log. He testified that he did not ask any other questions, nor did he give appellant a *Miranda* warning. Appellant then asked Officer Rose why he was under arrest. Officer Rose responded that appellant was under arrest for "PC Burglary." According to Officer Rose, appellant then replied, in the presence of both officers, that "you guys haven't got me 'cause you didn't see me come out of the house." Although at trial Officer Thunder could not recall appellant's exact words, he testified that appellant denied doing anything and stated that the officers didn't see him.

Russell Lind, another neighbor of Ms. Donohoe, was outside his home at 2641 Dupont Avenue North at about 7:30 p.m. that evening. Mr. Lind had plans to go to a drive-in movie with his family that evening and was carrying a cooler from his house to his van when he heard a metallic sound, which he testified sounded like a bicycle chain wrapped in plastic being dropped on the ground. He turned and looked in the direction of the Donohoe house, about twenty to twenty-five feet away. He observed a black male in his mid-twenties jumping to the ground from a walk-out porch on the second floor of the Donohoe house. Mr. Lind also noticed a blue bag lying on the ground next to where the man had landed and concluded that the sound he had heard was the bag hitting the ground.

Mr. Lind finished putting the cooler into his van and then realized that the man he had seen jumping off the porch was not his neighbor. Just as he realized something was wrong, he saw a police officer come around the corner of the house and apprehend the man who had jumped. Because the police had the man in custody, Mr. Lind did not stop to talk to them, but instead proceeded to go to the drive-in with his family.

At trial, Mr. Dennie testified that he had not had a sufficient opportunity to see the burglar's face and was thus unable to make a positive identification. He also stated that although he could not positively

identify the clothing seized from appellant at the time of his arrest, appellant's clothes were similar to the clothing the burglar wore.

Mr. Lind testified that his observation of the burglar was fairly brief and that he could not positively identify him, but did recall that the man was a black male in his mid-twenties and that he may have had his hair braided in cloth curlers.

Ms. Donohoe testified that when she returned to her home at midnight that night, she discovered that her jewelry box had been emptied out and that some money, a half carton of cigarettes, and other objects were missing. She identified the blue pillowcase and the items found inside it, which included the items which she noticed were missing, as her property.

The jury found appellant guilty of burglary in the second degree. His petition for post-conviction relief was denied by order of the trial court. He appeals from this order.

### ISSUES

1. Was the evidence sufficient as a matter of law to sustain appellant's conviction of burglary in the second degree?

2. Did admission of appellant's statement to the police shortly after his arrest violate his right against self-incrimination?

### ANALYSIS

1. In reviewing claims that the evidence was insufficient to sustain a jury's finding of guilt, the sole issue before this court is "whether the jury could reasonably have found the defendant guilty viewing the evidence in the light most favorable to the verdict." *State v. Daniels*, 332 N.W.2d 172, 180 (Minn.1983). If, on the basis of the evidence in the record, the jury could reasonably have found as it did, this court will not upset the jury's conclusion. *State v. Strimling*, 265 N.W.2d 423, 428 (Minn. 1978). We have reviewed the evidence introduced at trial and conclude that appellant's claim of insufficiency is completely without merit.

2. When a defendant is in custody and subject to interrogation by law enforcement agents, the fifth amendment requires that he be advised of his constitutional rights and that he make a knowing and intelligent waiver of those rights before any evidence obtained as a result of interrogation may be used against him at trial. *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). However, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Id.* at 478, 86 S.Ct. at 1630.

Here, the statement at issue was not made in response to police "interrogation," *see Rhode Island v. Innis*, 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980), but was a spontaneous, volunteered statement made while the officers asked routine booking questions regarding defendant's name, height, weight, and other biographical information. The Minnesota Supreme Court has held that the police need not give *Miranda* warnings before asking such routine booking questions. *State v. Abbott*, 356 N.W.2d 677, 679 (Minn.1984); *State v. Widell*, 258 N.W.2d 795, 797 (Minn.1977).

Appellant also argues that even if this court finds no federal constitutional violation in the admission of appellant's statement, the statement was admitted into evidence in violation of the guarantee against self-incrimination provided by article I, section 7 of the Minnesota Constitution. Article I, section 7 provides that "[n]o person shall * * * be compelled in any criminal case to be a witness against himself * * *." This provision is identical to the self-incrimination clause in the fifth amendment to the United States Constitution. While a United States Supreme Court interpretation of the identical federal provision is therefore of inherently persuasive, although not compelling, force, *State v. Murphy*, 380 N.W.2d 766 (Minn. Jan. 31, 1986), *State v. Fuller*, 374 N.W.2d 722, 727 (Minn.1985), the Minnesota Supreme Court remains the final authority on

the interpretation and enforcement of our state constitution. We find no Minnesota cases supporting appellant's position, nor do the facts compel a broader interpretation in this case.

## DECISION

The trial court is affirmed.