*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0632**

State of Minnesota,
Respondent,

vs.

Saaundre Julian Burns,
Appellant.

**Filed February 9, 2015
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-13-1864

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and Connolly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant Saaundre Julian Burns challenges his conviction of first-degree controlled-substance crime—possession, arguing that (1) the district court admitted

irrelevant and prejudicial evidence, (2) the state failed to disclose a statement made by Burns to a police officer, (3) the prosecutor committed misconduct by stating that Burns "has now lost the presumption of innocence," and (4) the district court erroneously declined to provide clarifying instructions in response to a jury question. We affirm.

## FACTS

On January 17, 2013, police officers executed a search warrant of an apartment in Minneapolis. Before officers entered, they heard someone run from the front of the apartment to the back, where the bathroom was located. When officers entered the apartment, they found Burns lying on the floor outside the bathroom and observed that the toilet was refilling as if it had been recently flushed. Officers observed that there was a canister with a false bottom compartment sitting on the back of the toilet. Officers broke open the toilet and discovered a baggie containing a large piece of suspected heroin. The contents of the baggie field-tested positive for heroin, weighing 83.5 grams without packaging. In the kitchen, officers observed a digital scale, sandwich bags, and knives with narcotics residue on them. In the bedroom, officers located photographs of Burns, Burns's wallet and identification, paperwork in Burns's name, and additional narcotics packaging. The state charged Burns with one count of controlled-substance crime in the first degree—possession, in violation of Minn. Stat. § 152.021, subd. 2(a)(1) (2012).

Before the jury trial began, Burns objected to the admission of testimony regarding the street value of the heroin, arguing that the evidence was irrelevant and prejudicial. The district court ruled that it would admit the testimony. The district court

2

also stated that it would admit surveillance evidence and testimony "that would tend to establish that [Burns] resided in that address," but that it would exclude evidence "that there was heavy traffic in that residence [because the] probative value of that information is far outweighed by the prejudice it creates against [Burns] in a possession case."

The state called police officer Lucas Peterson as its first witness. Officer Peterson testified that he was on a SWAT team investigating narcotics-related crimes, and during an investigation, he observed Burns entering and leaving the apartment that later became the subject of a search warrant. Officer Peterson testified that his SWAT team executed the search warrant on January 17 and discovered Burns inside the apartment.

In a sidebar discussion during Officer Peterson's testimony, the prosecutor indicated that she intended to introduce the baggies and the knives found in the apartment's kitchen into evidence. The prosecutor also offered the digital scale found in the apartment into evidence. Burns objected to the relevance of each piece of evidence. The district court admitted the evidence. Burns also objected to Officer Peterson's testimony regarding how, in general, drugs are packaged, cut, prepared, or distributed. The district court ruled that the prosecutor could elicit testimony that would give context to the case but told the prosecutor that it would stop her if she elicited testimony that became unduly prejudicial.

On redirect examination, the prosecutor asked Officer Peterson, "Were you able to form an opinion about whose apartment that was?" Burns objected, stating that it called for speculation; his objection was overruled. Officer Peterson responded, "It was the defendant's. He told me that it was and that he lived there." On recross, Burns's counsel

asked, "[D]oes it say anywhere in your report that [Burns] said it was his apartment, that he lived there?" Officer Peterson responded, "No." But Officer Peterson then clarified that he gathered Burns's address during a biographical interview and that the apartment's address was listed as Burns's address "in the address and arrest portion of the individual defendant's identification process."

Two other SWAT team officers testified about their observations during the execution of the search warrant on January 17, consistent with Officer Peterson's testimony. And a forensic analyst from the bureau of criminal apprehension testified that she analyzed the contents of the baggie found in the toilet and determined that it was heroin.

After conclusion of the testimony, the parties and the district court discussed jury instructions. The prosecutor proposed an additional jury instruction on the element of possession: "[P]ossession may be actual or constructive as well as . . . exclusive or joint, and possession need not be by the defendant alone but may be shared with others."[1] Burns argued that the language from the jury-instruction guide on possession of controlled substances should be used without the prosecutor's additional language. The district court did not include the prosecutor's proposed addition in its instructions to the jury. The district court instructed the jury on the elements of the crime, defining possession as: "The defendant possessed heroin if it was in a place under the defendant's exclusive control to which other people did not normally have access or, if found in a

---

[1] This language is from comments in the criminal jury-instructions guide that governs possession of weapons. *See* 10A *Minnesota Practice*, CRIMJIG 32.42 cmt. (2006).

place to which others had access, defendant knowingly exercised dominion and control over it."

During its instructions to the jury, the district court also explained that Burns was presumed innocent and that the state had the burden of proving Burns guilty beyond a reasonable doubt. During her closing argument, the prosecutor stated:

> Reason and common sense demand that a guilty verdict be returned in this case as the state has proven beyond a reasonable doubt that on January 17, 2013, the defendant was in possession of a large amount of heroin. The defendant has now lost the presumption of innocence. . . . I ask that you return a guilty verdict in this case.

Burns objected to the prosecutor's statement regarding the presumption of innocence. The district court overruled the objection.

During deliberations, the jury submitted four questions to the district court. The jury question relevant to this appeal is as follows:

> Please clarify this sentence for us, "The defendant possessed heroin if it was in a place under the defendant's exclusive control to which other people did not normally have access or, if found in a place to which others had access, defendant knowingly exercised dominion and control over it." Does "dominion and control over it" refer to the residence or the heroin?

The prosecutor argued that "they should be told that it does refer to heroin," but counsel could not agree to modify the jury instructions to substitute the word "it" with the word "heroin." Because of the lack of agreement, the district court stated it would "instruct the jury under Crim. JIG 3.29, the definition of words." The district court addressed the jury, stating:

5

> During the instructions that I rendered to you I defined certain words and phrases. If I have done so, you are to use those definitions in your deliberations. If I have not defined a word or phrase, you should apply the common, ordinary meaning of that word or phrase. And that's my response to your question.

The jury found Burns guilty as charged. The district court sentenced Burns to 117 months in prison. Burns appeals.

## DECISION

### I.

Burns argues that the district court abused its discretion by (1) admitting evidence of the knives, baggies, and scale found in the searched apartment and (2) allowing testimony regarding the street value of the heroin found in the toilet and typical narcotics-related uses for the knives, baggies, and scale. Burns argues that the evidence was irrelevant and that even if the evidence was relevant, its probative value was significantly outweighed by the danger of unfair prejudice. We review a district court's evidentiary rulings for an abuse of discretion. *State v. Riddley*, 776 N.W.2d 419, 424 (Minn. 2009). "A defendant appealing the admission of evidence has the burden to show the admission was both erroneous and prejudicial." *Id.*

### A. Relevance

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. "Generally, evidence is relevant if in some degree it advances the inquiry and thus has probative

6

value." *State v. Harris*, 521 N.W.2d 348, 351 (Minn. 1994) (quotation omitted). "The rule adopts a liberal as opposed to restrictive approach to the question of relevancy. . . . A slight probative tendency is sufficient under rule 401." Minn. R. Evid. 401 cmt.; *see also State v. Ture*, 632 N.W.2d 621, 631 (Minn. 2001) ("Rule 401 adopts a minimal relevancy approach." (quotation omitted)).

The elements of Burns's drug-possession crime were: (1) knowingly possessing one or more mixtures of a total weight of 25 grams or more of heroin, (2) knowing or believing that the substance was heroin, and (3) possessing the heroin in Hennepin County on or about January 17, 2013. Burns argues that the main issue in the case was whether he possessed the heroin. And he argues that the evidence of the knives, baggies, scale, street value of the heroin, and typical uses of the knives, baggies, and scale was not relevant to the issue of whether he possessed the heroin. The state argues that the evidence was relevant to the issue of possession because the state sought to prove that Burns possessed the heroin by providing circumstantial evidence that Burns lived in or frequented the apartment, that packaging and sale of heroin occurred in the apartment, and that the heroin recovered at the apartment was of a value associated with sale and not individual use. The district court found that the evidence was relevant to the case.

The evidence that the district court admitted tends to show that drug-related activities occurred in the apartment where police found Burns and the heroin. Under the minimal-relevancy approach of rule 401, the evidence was relevant to whether Burns possessed the heroin. We therefore conclude that the district court did not abuse its

discretion by finding that the evidence of the knives, baggies, scale, street value of the heroin, and typical-use testimony of the evidence was relevant.

## B.     Danger of Unfair Prejudice

Burns argues that the evidence of the knives, baggies, scale, street value of the heroin, and typical narcotics-related uses of the knives, baggies, and scale unfairly prejudiced him by portraying him as a dangerous man entrenched in the drug world. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. "When balancing the probative value against the potential prejudice, unfair prejudice 'is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage.'" *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quoting *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005)). "Rulings concerning the admissibility of evidence under [rule] 403 are within the discretion of the district court, and will only be reversed for a clear abuse of that discretion." *Schulz*, 691 N.W.2d at 477.

Based on our review of this record, the district court balanced the prejudicial effect of the evidence against the probative value when determining which pieces of evidence to admit and which to exclude. The district court excluded testimony that heavy traffic occurred at the apartment and that packaging of narcotics relates to the sale of narcotics because that testimony tended to show drug-dealing operations. In addition, the district court did not "allow any additional inquiry on questions of drug trafficking specifically," stating that this evidence was unfairly prejudicial. The district court found that the

probative value of this evidence was substantially outweighed by the danger of unfair prejudice because it tended to show that Burns was guilty of selling drugs, not merely possessing heroin, which was the charged offense. The district court assessed whether the evidence was unfairly prejudicial to Burns's possession charge and excluded relevant evidence that it determined was substantially outweighed by the danger of unfair prejudice.

The district court admitted the following evidence: (1) the approximate street value and quantity of the heroin; (2) testimony that Burns came and went from the apartment; (3) the baggies, knives, and scale that were found in the apartment; and (4) testimony that baggies, knives, and scales are typically used in the packaging of heroin. The district court drew a careful line, distinguishing between evidence that had highly probative value because it tended to prove that Burns possessed the heroin and evidence that was unfairly prejudicial because it portrayed him as a drug dealer.

We conclude that the district court properly exercised its discretion by finding that the probative value of the admitted evidence was not substantially outweighed by the danger of unfair prejudice.

## II.

Burns alleges that the state violated the rules of discovery by failing to disclose a statement he made to police before eliciting the statement during Officer Peterson's testimony. Burns argues that this violation deprived him of his constitutional rights to due process and a fair trial.

The Minnesota Rules of Criminal Procedure require that the state disclose "any confessions, admissions, or statements in the nature of confessions made by the defendant." Minn. R. Crim. P. 7.01(a)(2). The rules also require that the state disclose "the substance of oral statements" relating to the case. Minn. R. Crim. P. 9.01, subd. 1(2)(c). The prosecutor's obligation extends "to material and information in the possession or control of members of the prosecution staff and of any others who have participated in the investigation." *Id.*, subd. 1a(1). Because Burns did not object at trial, our standard of review is plain error. *See State v. Ramey*, 721 N.W.2d 294, 297 (Minn. 2006) ("On appeal, an unobjected-to error can be reviewed only if it constitutes plain error affecting substantial rights."). The plain-error test requires that "before an appellate court reviews unobjected-to trial error, there must be (1) error; (2) that is plain; and (3) affects substantial rights. If these three prongs are satisfied, the [appellate] court then assesses whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Id.* at 302 (citation omitted).

Burns alleges that the state committed error by failing to disclose a statement that Burns made to Officer Peterson, telling the officer that he lived at the apartment where the heroin was found. Officer Peterson explained at trial that he gathered this information as part of the biographical interview with Burns and that the information was included in the "address and arrest" portion of the case report. The state asserts that it provided Burns with the full case report and therefore did not violate the discovery rules. Burns does not allege that he did not receive the full case report. In fact, Burns's counsel

acknowledged that he had the case report in front of him when he was cross-examining Officer Peterson and acknowledged that there was an entry in the address field.

Addressing an alleged violation of rule 7.01, the Minnesota Supreme Court held that no violation occurred when undisclosed evidence that the appellant gave false information during the booking process was admitted at trial. *State v. Widell*, 258 N.W.2d 795, 797 (Minn. 1977). The supreme court reasoned that "booking questions have value to the criminal process independent of any tendency to uncover admissions and . . . police have a legitimate interest in orderly records identifying the names, addresses, and places of employment of those arrested." *Id.* (quotation omitted). The *Widell* court held that failing to disclose statements made during the booking process was not a violation of rule 7.01. *Id.* Similarly, the state argues here that Burns's statement identifying his address during the biographical interview with Officer Peterson was not subject to discovery rule 7.01. We agree.

Because the state disclosed the biographical-interview information, including Burns's address, when it gave Burns the full case report, we conclude that no violation of the discovery rules occurred. In addition, even if the biographical-interview statement had not been disclosed, the information elicited in the biographical interview was not subject to discovery rule 7.01 because the statement was not in the "nature of confessions." We conclude that no error occurred.

### III.

Burns alleges that the prosecutor committed prejudicial misconduct when she stated in rebuttal closing argument that Burns "has now lost the presumption of

11

innocence." We review closing arguments in their entirety to determine whether prosecutorial misconduct occurred. *State v. Vue*, 797 N.W.2d 5, 15 (Minn. 2011). "The prosecutor has the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefore." *State v. Williams*, 586 N.W.2d 123, 127 (Minn. 1998) (quotation omitted). The prosecutor has "considerable latitude" in making a closing argument, and the argument is not required to be "colorless." *Id.* But "[m]isstatements of the burden of proof are highly improper and would, if demonstrated, constitute prosecutorial misconduct." *State v. Hunt*, 615 N.W.2d 294, 302 (Minn. 2000).

We review the claim of prosecutorial misconduct under the two-tier harmless-error test. *State v. Yang*, 774 N.W.2d 539, 559 (Minn. 2009). We "first address whether there was misconduct, and if so, whether it entitles [Burns] to a new trial." *State v. Wren*, 738 N.W.2d 378, 390 (Minn. 2007). If the claim involves "unusually serious prosecutorial misconduct, there must be certainty beyond a reasonable doubt that misconduct was harmless." *Yang*, 774 N.W.2d at 559. But if the claim involves less serious prosecutorial misconduct, the case is reviewed "to determine whether the misconduct likely played a substantial part in influencing the jury to convict." *Id.* Caselaw does not clearly distinguish between "unusually serious" and "less serious" misconduct. *See State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012) (declining to reach the issue of the continued viability of the two-tier test).

## A.   Misconduct

In her closing argument, the prosecutor stated:

As the Judge told you and may tell you again, the elements are your focus as the jury. Your only job, and it's an incredibly important job, is to determine whether the elements of the crime have been met, and it is clear beyond a reasonable doubt that all of the elements are met by the evidence in this case. The evidence in this case that bears on the elements of the offense is that the defendant was caught flushing an enormous amount of heroin down the toilet. Reason and common sense tell us that the defendant committed exactly the crime he's accused of. He was in possession of the heroin. Reason and common sense demand that a guilty verdict be returned in this case as the state has proven beyond a reasonable doubt that on January 17, 2013, the defendant was in possession of a large amount of heroin.

The defendant has now lost the presumption of innocence. Soon you will be asked to begin deliberating. I ask that you return a guilty verdict in this case.

When Burns objected, the prosecutor cited *State v. Young* to argue that she did not misstate the law. In *Young*, the prosecutor stated:

When the trial began, the Court told you that that young man right there is an innocent man. He was. Until the defense stood up and rested. Because at that time the state had presented to you sufficient evidence to find the defendant guilty of all the crimes that the Court just gave you the— instructions on. He's no long [sic] an innocent man. The evidence that's been presented to you by the state has shown you that he's guilty beyond a reasonable doubt.

*State v. Young*, 710 N.W.2d 272, 280 (Minn. 2006). The Minnesota Supreme Court found that this was not a misstatement of the law under the plain-error test. *Id.* at 281. The supreme court found that "[r]ead in context, . . . the prosecutor's argument appears to be that the state had produced sufficient evidence of Young's guilt to overcome the presumption of innocence, not that he was not entitled to the presumption in the absence of proof beyond a reasonable doubt." *Id.* at 280-81.

13

*Vue* addressed a similar statement in which the prosecutor stated:

> As the Judge has told you, the Defendant is presumed innocent . . . unless and until proven guilty beyond a reasonable doubt. The Defendant has now lost that presumption of innocence as a result of the evidence that you have heard in this case.
> . . . .
> In this case, . . . our reason and common sense tell us that Gary Vue committed the crimes that he is accused . . . . That is clear beyond a reasonable doubt. Therefore, the Defendant has lost his presumption of innocence.

797 N.W.2d at 13-14. The supreme court, reviewing for plain error, did not decide whether such a statement was error because it concluded that "the prosecutor's alleged misstatement of the burden of proof was [not] plain or obvious." *Id.* at 14. But the supreme court warned, "we caution prosecutors about the use of such language in their closing argument and urge them to 'adhere as closely as possible to the normal statement of the presumption [of innocence].'" *Id.* (quoting *State v. Bohlsen*, 526 N.W.2d 49, 50 (Minn. 1994)).

Here, Burns objected to the prosecutor's statement, so we review for harmless error. *See Yang*, 774 N.W.2d at 559. We conclude that the prosecutor's statement went beyond the statements made in *Young* and *Vue*. The prosecutor did more than argue that the state had met its burden by proving guilt beyond a reasonable doubt. The prosecutor misstated the law because the presumption of innocence remains with Burns until the jury determines that his guilt was proven beyond a reasonable doubt. *See United States v. Crumley*, 528 F.3d 1053, 1065 (8th Cir. 2008) (holding that the prosecutor committed

misconduct when she stated that the "presumption [of innocence] can be removed by fact, by proof").

We conclude that the prosecutor committed misconduct because she misstated the presumption of innocence and the burden of proof. We next consider whether the misconduct was harmless.

**B.    Harm of Misconduct**

Defendants' presumption of innocence and the state's burden of proof beyond a reasonable doubt are fundamental guarantees of the Due Process Clause. *State v. Peterson*, 673 N.W.2d 482, 486 (Minn. 2004) (stating that "[t]he presumption of innocence is a fundamental component of a fair trial" and "the Due Process Clause requires the state to prove every element of a charged offense beyond a reasonable doubt"). Therefore, we will analyze the prosecutor's misstatement of law as unusually serious misconduct, requiring that the misconduct be harmless beyond a reasonable doubt in order to not require a new trial.

Minnesota law "presume[s] that the jury follows the [district] court's instructions." *State v. Pendleton*, 706 N.W.2d 500, 509 (Minn. 2005). "[A] prosecutor's attempts to shift the burden of proof are often nonprejudicial and harmless where . . . the district court clearly and thoroughly instructed the jury regarding the burden of proof." *State v. McDonough*, 631 N.W.2d 373, 389 n.2 (Minn. 2001).

Here, prior to the prosecutor's rebuttal closing argument, the district court instructed the jury as follows:

> The defendant is presumed innocent of the charge, and that presumption remains with the defendant unless and until the jury determines that the defendant has been proven— proved guilty beyond a reasonable doubt. . . . The burden of proving guilt is on the state. The state must sustain its burden of proof as to all elements of the offense. The defendant does not have to prove innocence.

The district court then explained the "proof beyond a reasonable doubt" standard. The district court also stated, "If an attorney's argument contains any statement of the law that differs from the law that I give you, you should disregard that statement." The district court reiterated, "The state must convince you by evidence beyond a reasonable doubt that the defendant is guilty of the crime charged. The defendant has no obligation to prove innocence." Later on during the jury instructions, the district court stated, "Remember, the state must convince you by evidence beyond a reasonable doubt the defendant is guilty of the crimes charged."

When hearing the objection to the prosecutor's statement and deciding whether to provide a curative instruction, the district court stated:

> I not only have read into the record the presumption of innocence and that it stays throughout the entire trial, I have made that clear several times, I have also—I am sending, whenever that is, the jury to deliberate with instructions that emphasize the presumption of innocence as well, reiterates the presumption of innocence. And as I have already instructed the jury, statements made by counsel are argument.

The district court provided clear instructions on the presumption of innocence and the burden of proof and instructed the jury to disregard statements of the law made by counsel that differed from the law given by the district court. The district court's thorough instructions make the prosecutor's serious misconduct harmless beyond a

16

reasonable doubt.  *See State v. Shoen*, 578 N.W.2d 708, 718 (Minn. 1998) (stating that reviewing courts presume that jurors follow the district court's instructions "to disregard any statement of law by an attorney that differed from that of the court"); *State v. Trimble*, 371 N.W.2d 921, 926-27 (Minn. App. 1985) (concluding that prosecutor's error in misstatement of presumption of innocence was harmless where jury received proper instructions), *review denied* (Minn. Oct. 11, 1985).  In addition, the evidence against Burns was overwhelming.  Therefore we conclude that the misconduct was harmless beyond a reasonable doubt because the verdict was "surely unattributable to the error." *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003) (quotation omitted).

We conclude that the prosecutor misstated the burden of proof, but that the prosecutor's misconduct was harmless beyond a reasonable doubt because (1) the district court clearly and thoroughly instructed the jury regarding the burden of proof, the presumption of innocence, and the role of closing arguments and (2) there was overwhelming evidence in favor of the jury's guilty verdict.  As the supreme court warned in *Vue*, we caution prosecutors "to 'adhere as closely as possible to the normal statement of the presumption [of innocence].'"  797 N.W.2d at 13 (quoting *Bohlsen*, 526 N.W.2d at 50).  We acknowledge that in a different case with less thorough jury instructions and less overwhelming evidence, this same misstatement of the law could result in reversal and a new trial.

**IV.**

Burns argues that the district court committed plain error by failing to give the jury additional instructions in response to a jury question on the element of "possession."  The

17

district court is allowed "considerable latitude in selecting the language" of each jury instruction. *State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002). We will uphold a district court's decision regarding jury instructions absent an abuse of discretion. *State v. Houston*, 654 N.W.2d 727, 734 (Minn. App. 2003), *review denied* (Minn. Mar. 26, 2003). Because Burns did not object to the jury instructions during trial, we review this issue for plain error. *See State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). Under the plain-error test, Burns must show (1) error, (2) that was plain, and (3) that affected his "substantial rights." *Id.* If all three prongs are satisfied, then we decide whether to address the error to ensure "fairness and the integrity of the judicial proceedings." *Id.*

The district court instructed the jury on the element of possession by stating: "The defendant possessed heroin if it was in a place under the defendant's exclusive control to which other people did not normally have access or, if found in a place to which others had access, defendant knowingly exercised dominion and control over it." During deliberations, the jury submitted the following question to the district court: "Does [']dominion and control over it['] refer to the residence or the heroin?" The prosecutor argued that the jury "should be told that it does refer to heroin," but counsel could not agree to modify the instructions. The district court answered the jury's question by stating:

> During the instructions that I rendered to you I defined certain words and phrases. If I have done so, you are to use those definitions in your deliberations. If I have not defined a word or phrase, you should apply the common, ordinary meaning of that word or phrase. And that's my response to your question.

18

In *State v. Florine*, the Minnesota Supreme Court held that a jury may find that a defendant possessed a controlled substance if "in a place to which others had access [where] there is a strong probability . . . that defendant was at the time consciously exercising dominion and control over it." 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975). Subsequent caselaw has clarified that "it" refers to the defendant's control over the drugs and not the place in which the drugs were found. *See State v. Dickey*, 827 N.W.2d 792, 796 (Minn. App. 2013). The jury-instruction guide for the elements of possession of a controlled substance is nearly identical to the district court's instruction. *See* 10A *Minnesota Practice*, CRIMJIG 20.04 (2006) ("The defendant possessed [heroin] if it was in a place under the defendant's exclusive control to which other people did not normally have access, or if found in a place to which others had access, defendant knowingly exercised dominion and control over it.").

The district court's jury instruction on possession complied with the jury-instruction guide and with caselaw. The district court's decision to not provide further clarification to the jury was well within its discretion because the prosecutor and Burns's counsel could not agree on what clarification to provide to the jury and because the original instruction conformed to the jury-instruction guide and caselaw.

**Affirmed.**